IN THE CIRCUIT COURT OF LOWNDES COUNTY, ALABAMA

| | | |
|---|---|---|
| KENNETH & DEBRA SCOTT, | ) | HARTLEY & HICKMAN |
| Plaintiffs, | ) | AUG 2 3 2005 |
| v. | ) CV 2005-10 | ATTORNEYS |
| WASHINGTON MUTUAL BANK, F.A., | ) | |
| Defendant. | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Come now the Plaintiffs, Kenneth & Debra Scott ("the Scotts" or "Plaintiffs"), and for their Complaint against Defendant Washington Mutual Bank, F.A. ("WAMU"), states as follows:

### INTRODUCTION

1. This is an action against WAMU for the imposition of unconscionable, unauthorized, and excessive Payoff Fees ("PFs") in connection with the payoff and satisfaction of mortgage loans. WAMU, which acquired the Scotts' mortgage loan, charged the Scotts **$180.00** in connection with the payoff of said mortgage loan, even though the Note does not authorize the charging of any such fee and prohibits any prepayment penalty. WAMU has charged other mortgagees similar PFs to its other borrowers in connection with mortgage loans which WAMU owns, has acquired, or services, and has therefore acted willfully and intentionally in connection with the imposition of such PFs.

2. WAMU has also discriminated and taken adverse actions against the Scotts, and others similarly situated to the Scotts, with respect to its charges for PFs. WAMU charged the Scotts $180.00 (which WAMU contends actually represented three

E:\wamu_COMPLAINT.doc

separate $60.00 charges) for their PFs. But WAMU charged other borrowers only $30.00 for a PF. On information and belief, WAMU decided what amount to charge a borrower for a PF based on information contained in the borrower's credit file and credit report. But when it imposed that charge, WAMU did not comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., which required WAMU to give notice to a borrower (such as the Scotts) against whom adverse action was taken.

## PARTIES, JURISDICTION, AND VENUE

3.  Plaintiffs are resident citizens of Lowndes County, Alabama.

4.  WAMU is a bank chartered under the laws of a jurisdiction other than Alabama, with principal offices located in a state other than Alabama.

5.  Venue is proper in this Court.

## FACTUAL ALLEGATIONS

6.  On or about October 13, 1987, Plaintiffs contracted with Louis Shepherd Construction Co. ("Shepherd") for the construction of a house or home improvements to their house in Fort Deposit, Alabama. To pay for the construction work, Plaintiffs entered into an installment sales contract and security agreement ("Note") with Shepherd with a face amount of $49,700.00. A true and correct copy of the Note is attached as **Exhibit A** hereto.

7.  Shepherd sold the Note to Goldome Credit Corp. ("Goldome"), and ultimately, WAMU acquired the Note. Plaintiffs made their monthly payments, which were scheduled to be paid for 240 consecutive months (20 years).

8.  In June of 2003, Plaintiffs decided to refinance the remaining portion of the debt owed under the Note.

9. On or about June 17, 2003, Plaintiffs refinanced their WAMU mortgage. WAMU sent a Demand/Payoff Statement ("Statement"), a true and correct copy of which is attached hereto as **Exhibit B,** which was used to calculate the payoff for closing. Without authorization, and without any contractual authority conferred in the Note, and in the face of a contractual prohibition on prepayment penalties in the Note, WAMU unilaterally charged Plaintiffs **$180.00** as a PF. WAMU has contended that this PF actually comprised three separate $60.00 charges for PFs.

10. WAMU charged other borrowers only $30 for their PFs. Attached hereto as Exhibit C is an example of such a PF charge.

11. On information and belief, WAMU determines the amount to charge a borrower for a PF based on information contained in the credit file and credit report of the borrower. Thus, the higher charges for PFs incurred by the Scotts and others similarly situated are discriminatory and constitute "adverse actions" within the meaning of FCRA, 15 U.S.C. § 1681a(k)(1).

12. WAMU did not send Plaintiffs any notice of adverse action, as required by FCRA, 15 U.S.C. 1681m, following imposition of the PF.

## COUNT ONE – BREACH OF CONTRACT

13. Plaintiffs reallege and adopt by reference all prior allegations of the Complaint, as if set forth fully herein.

14. The Note is the only contract governing the business relationship between Plaintiffs and WAMU. The Note does not authorize imposition of a PF. The Note prohibits charging any prepayment penalty.

15. By charging the PF to Plaintiffs, WAMU has breached the contract between Plaintiffs and WAMU. WAMU had no colorable legal claim to the PF, because, among other reasons, the PF was not authorized by the Note, and because the imposition of the PF violates the provision in the Note prohibiting PFs.

16. As a proximate result of said breach, Plaintiffs have suffered damage.

WHEREFORE, Plaintiffs demand judgment against WAMU in such amount as may be found at trial, together with attorneys' fees, interest and costs of this action.

## COUNT TWO - UNJUST ENRICHMENT & MONEY HAD AND RECEIVED

17. Plaintiffs reallege and adopt by reference all prior allegations of the Complaint, as if set forth fully herein.

18. WAMU has acquired money which in equity and good conscience belongs rightly to Plaintiffs. WAMU has been unjustly enriched at the expense of Plaintiffs, and equity demands that WAMU return the money to Plaintiffs which was wrongfully taken.

WHEREFORE, Plaintiffs demand judgment against WAMU on behalf of themselves and all putative class members in such amount as may be proven in equity, together with interest and costs.

## COUNT THREE – VIOLATION OF FAIR CREDIT REPORTING ACT

19. Plaintiffs reallege and adopt by reference all prior averments in the Complaint, as if set forth fully herein.

20. WAMU charged the Scotts a PF of $180.00. WAMU has averred that the PF charged to the Scotts actually comprised three separate $60.00 charges for PFs.

21. WAMU charged other borrowers lesser amounts for their PFs.

22. On information and belief, WAMU determines the amount to charge a borrower for a PF based on information contained in the credit file and credit report of the borrower.

23. The higher charges for PFs incurred by the Scotts and others similarly situated constitute "adverse action" within the meaning of FCRA, 15 U.S.C. § 1681a(k)(1).

24. WAMU willfully and knowingly did not provide notice to the Scotts or to others similarly situated of such adverse action, in violation of FCRA, 15 U.S.C. 1681m.

WHEREFORE, Plaintiffs demand judgment against WAMU on behalf of themselves and the putative class, pursuant to 15 U.S.C. §§ 1681n, in the amount of damages and other relief allowed under that provision, together with attorneys fees and costs of this action. In the alternative, Plaintiffs demand judgment against WAMU on behalf of themselves and the putative class, pursuant to 15 U.S.C. § 1681o, in the amount of damages and other relief allowed under that provision, together with attorneys fees and costs of this action.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs reallege and adopt by reference all prior averments in the Complaint, as if set forth fully herein.

32. Pursuant to Ala. R. Civ. P. 23(b)(3), Plaintiffs bring this action on behalf of themselves and a putative class of persons defined as follows: all persons residing in the United States who, from six years prior to the filing of this action up to and including the date of final judgment herein, were charged a PF in any amount by WAMU or any affiliate bank or corporation of WAMU.

33. Count Three is brought on behalf of a subclass consisting of all persons who, from two years prior to the filing of this action up to and including the date of final judgment herein, (1) were charged a PF by WAMU or any affiliate bank or corporation of WAMU in connection with the satisfaction of a mortgage, (2) where the amount of the PF charged to such persons was higher than the lowest amount charged by WAMU for a PF at the time of the charge; and (3) where WAMU failed to send any notice of adverse action to such persons.

34. The elements of Rule 23(a) are met in this case, in that (1) the class is so numerous that joinder of individual members of the class is impractical; (2) there are questions of law and/or fact which are common throughout the class; (3) the claims of the Plaintiffs and defenses thereto are typical of the claims of the class members and defenses thereto; and (4) Plaintiffs and their counsel will adequately represent the interests of absent class members.

35. The elements of Rule 23(b)(3) are also satisfied in this case, in that the common questions of law and fact predominate over individual questions. Among the common issues to be decided are as follows:

   a. whether the Note and other contracts between WAMU and its mortgagees authorize imposition of a PF in any amount, including but not limited to the amount charged by WAMU for the PF;

   b. whether the charging of a PF where the amount is based on the creditworthiness of the borrower is an "adverse action" within the meaning of FCRA.

**PLAINTIFFS DEMAND TRIAL BY JURY FOR COUNTS ONE & THREE.**

Respectfully submitted,

_____
Wilson F. Green (ASB-8293-E61W)
One of the Attorneys for Plaintiffs

**OF COUNSEL**:
Battle Fleenor Green Winn & Clemmer LLP
The Financial Center
505 North 20th Street, Suite 1150
Birmingham, Alabama 35203
(205) 397-8163
wgreen@bfgwc.com

Randall K. Bozeman
Bozeman & Bozeman
P.O. Box 337
Hayneville, Alabama 36040-0337
(334) 548-2233

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by United States Mail, first-class, postage prepaid and properly addressed, on this the 22nd day of August, 2005, on the following:

P. Richard Hartley
Hartley & Hickman
415 East Commerce Street, Ste. 101
P.O. Box 583
Greenville, Alabama 36037-0583

Matthew M. Neumeier
Scott T. Schutte
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois 60611

_____
Of Counsel

# EXHIBIT A

# NOTE

OCTOBER 13 , 19 87                          FT. DEPOSIT , ALABAMA
                                            [City]          [State]


[Property Address]

1. **BORROWER'S PROMISE TO PAY**

   In return for a loan that I have received, I promise to pay U.S. $ 49,700.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is LOUIS J. SHEPHERD CONST. CO., INC. DBA ACCEDING HOMES
   . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

   Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 10.5 %.

   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

   (A) Time and Place of Payments

   I will pay principal and interest by making payments every month.

   I will make my monthly payments on the 1st day of each month beginning on FEBRUARY 1, 19 88 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on JANUARY 1 , 2008 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

   I will make my monthly payments at   4430-C GOVERNMENT BLVD. MOBILE,AL.,36609
                                        or at a different place if required by the Note Holder.

   (B) Amount of Monthly Payments

   My monthly payment will be in the amount of U.S. $ 496.19

4. **BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

   I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**

   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) Late Charge for Overdue Payments

   If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B) Default

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) Notice of Default

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

   (D) No Waiver By Note Holder

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) Payment of Note Holder's Costs and Expenses

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

"CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT."

*Kenneth Earl* ..............................................(Seal)
-Borrower

*Deborah T. Scott* ..........................................(Seal)
-Borrower

.......................................................................(Seal)
-Borrower

.......................................................................(Seal)
-Borrower

*[Sign Original Only]*

# EXHIBIT B

```
Washington Mutual IVR Payoff         JUN-18-03      03:13          Page:1
                            WASHINGTON MUTUAL
                            DEMAND/PAYOFF STATEMENT
                            -----------------------
                                 06/17/2003
TO: KENNETH SCOTT                RE: Loan No. 9085927317213
    KENNETH SCOTT                    KENNETH SCOTT
    DEBRA SCOTT                      DEBRA SCOTT
    PO BOX 324
    FORT DEPOSIT       AL 36032
                                         OLD CALHOUN RD
                                         FORT DEPOSIT       AL
                                         Loan Type - Conventional
```

****************************************************************
*PAYOFF FIGURES MUST BE VERIFIED WITHIN 24 HOURS PRIOR TO       *
*PAYOFF. THE TOTAL AMOUNT NECESSARY TO PAY OFF THE LOAN IS      *
*SUBJECT TO FINAL VERIFICATION FROM THE NOTEHOLDER. WE          *
*RESERVE THE RIGHT TO ADJUST THESE FIGURES AND REFUSE ANY       *
*FUNDS THAT ARE NOT SUFFICIENT TO PAY OFF THE LOAN IN           *
*FULL. (THIS INCLUDES, BUT IS NOT LIMITED TO, DISHONORED        *
*PAYMENTS, DISBURSEMENTS OR ADJUSTMENTS MADE BETWEEN THE        *
*DATE OF THIS DEMAND/PAYOFF STATEMENT AND THE RECEIPT OF        *
*THE PAYOFF FUNDS.) FOR SAME DAY CREDIT, PAYOFF FUNDS MUST      *
*BE RECEIVED BY 3:00 PM CST MONDAY THROUGH FRIDAY.              *
******* PLEASE CALL (800)282-4840 TO VERIFY AMOUNTS *******

The following amounts are required to pay this loan in full on 06/27/2003. The next scheduled payment due on this loan is the 06/01/2003 payment.

```
Current total unpaid Principal Balance     $     22269.55
Interest to 06/27/2003 at 10.500%                  361.42

TOTAL TO PAY LOAN IN FULL ON 06/27/2003.   $     22630.97

IF NOT PAID IN FULL BY 06/27/2003, ADD
  DAILY INT. (per diem)                    $          6.41
```

The following amounts are additional loan servicing fees that are due and owing to Washington Mutual relating to this transaction.

```
Unpaid Late Charges and/or other fees              49.62
PAYOFF STATEMENT FEE                              180.00
RECORDING FEE                                       9.50

TOTAL AMOUNT DUE TO WASHINGTON MUTUAL           22870.09
```

THIS LOAN HAS AN ESCROW ACCOUNT. ESCROW DISBURSEMENTS WILL CONTINUE TO BE MADE AS SCHEDULED UNTIL LOAN IS PAID IN FULL

Washington Mutual IVR Payoff                    JUN-18-03      03:14         Page:2

DEMAND/PAYOFF STATEMENT (Cont.)
Issued: 06/17/2003                    Loan no. 9085927317213

Issuance of this statement does not suspend the requirement to make the loan payment when as due under the loan contract. A late charge of $ 24.81 will be assessed and added to the total due if any payment is received 15 or more days after the due date of any payment.

It is the customer's responsibility to cancel any automatic payment arrangement. Washington Mutual's AutoPay service continues to withdrawl unless cancellation is requested and received in this office at least 10 business days prior to the withdrawl date. Do not stop payment on any payment already made. Overpayments will be refunded within 15 days of receipt of good payoff funds. If this property is sold to another party, please provide the seller's forwarding address.

Washington Mutual does not assume any liability for any escrow shortage due to a disbursement made after the date of this quote and according to the terms of the loan contract.

If property taxes have been paid through an escrow account for this loan, they will become the property owner's responsibility after loan payoff. if a property tax bill is not received, the property owner should contact the local taxing authority for this information. Washington Mutual will not be responsible for interest and penalties if property taxes are not paid.

ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK, CERTIFIED FUNDS OR WIRE TRANSFER. PAYOFFS OVER $1,000,000.00 MUST BE WIRED. PLEASE DIRECT FUNDS TO:

OVERNIGHT DELIVERY                    WIRE INSTRUCTIONS
-----------------                     -----------------
WASHINGTON MUTUAL BANK, FA            ABA Number: 0750-0002-2
ATTN: Payoff Unit - Ste 908           Beneficiary: WaMu Loan Payoff
11200 W. Parkland Ave.                Beneficiary Acct: 182380181590
Milwaukee, WI 53224                   Borr: KENNETH SCOTT
(Ref Name & Loan # on Check)          Loan #: 9085927317213

The lien release will be mailed in accordance with applicable laws and the loan documents. The lien will not be release if: 1)any funds previously received are rejected by the bank upon which it is drawn or 2)an insufficient amount is received to pay off the loan in full.

For verification or update of figures, please call Washington Mutual's Customer Care Center at 800-282-4840. In most cases, updated payoff amounts can be obtained through our automated response system. A Customer Care Specialist may be reached Monday - Friday 7:00am - 8:00pm and Saturday 8:00am - 1:00pm.

# EXHIBIT C

XP431

## DEMAND / PAYOFF STATEMENT
## 06-17-05

TO:

400 Creekview Cir
Gardendale, AL 35071

```
                        Prop Addr: 400 Creekview Cir
                                   Gardendale AL 35071
RE: Loan No. 8464883712            Loan Type - Conventional
TO:JENNIFER FAX NUMBER:2056311333
```

* PAYOFF FIGURES MUST BE VERIFIED WITHIN 24 HOURS PRIOR TO PAYOFF. THE
* TOTAL AMOUNT NECESSARY TO PAY OFF THE LOAN IS SUBJECT TO FINAL
* VERIFICATION FROM THE NOTEHOLDER. WE RESERVE THE RIGHT TO
* ADJUST THESE FIGURES AND REFUSE ANY FUNDS THAT ARE NOT SUFFICIENT TO
* PAY OFF THE LOAN IN FULL. (THIS INCLUDES, BUT IS NOT LIMITED TO,
* DISHONORED PAYMENTS, DISBURSEMENTS OR ADJUSTMENTS MADE BETWEEN THE
* DATE OF THIS DEMAND/PAYOFF STATEMENT AND THE RECEIPT OF THE PAYOFF
* FUNDS.) FOR SAME DAY CREDIT, PAYOFF FUNDS MUST BE RECEIVED BY
* 3:00 PM CST, MONDAY THROUGH FRIDAY.
* * * * * * * PLEASE CALL (866)926-8937 TO VERIFY AMOUNTS * * * * * *

The following amounts are required to pay this loan in full on 06-17-05.
The next scheduled payment due on this loan is the 07-01-05 payment.

```
The current total unpaid Principal Balance is:   $      93,511.23
Interest to 06-17-05 at  6.75000%                          276.69
Escrow/Impound Overdraft                                   307.76
TOTAL AMOUNT TO PAY LOAN IN FULL ON 06-17-05     $      94,095.68

IF NOT PAID IN FULL BY 06-17-05, ADD DAILY INT. (per diem)  $    17.29
```

The following amounts are additional loan servicing fees that are due
and owing to Washington Mutual relating to this transaction:

```
Payoff Statement Fee                                        30.00
Recording Fee                                                3.00
Reconveyance Fee                                              .00
TOTAL AMOUNT DUE TO WASHINGTON MUTUAL             $     94,128.68
```

THIS LOAN HAS AN ESCROW ACCOUNT. ESCROW DISBURSEMENTS WILL CONTINUE TO
BE MADE AS SCHEDULED UNTIL LOAN IS PAID IN FULL.
*** Page 1 of 2 - SEE NEXT PAGE FOR ADDITIONAL PAYOFF INFORMATION ***

XP431

DEMAND / PAYOFF STATEMENT (Cont.)  
Issued: 06-17-05

Page 2 of 2  
Loan No. 8464883712

Issuance of this statement does not suspend the requirement to make the loan payments when and as due under the loan contract. A late charge of $31.47 will be assessed and added to the total amount due if any payment is not received within 15 days after the due date.

It is the customer's responsibility to cancel any automatic payment arrangement. Washington Mutual's AutoPay service continues to withdraw unless cancellation is requested and received in this office at least 10 business days prior to the withdrawal date. Do not stop payment on any payment already made. Overpayments will be refunded within 15 days of receipt of good payoff funds. If this property is sold to another party, please provide the seller's forwarding address.

Washington Mutual does not assume any liability for any escrow shortage due to a disbursement made after the date of this quote and according to the terms of the loan contract.

If property taxes have been paid through an escrow account for this loan, they will become the property owner's responsibility after loan payoff. If a property tax bill is not received, the property owner should contact the local taxing authority for this information. Washington Mutual will not be responsible for interest and penalties if property taxes are not paid.

ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK, CERTIFIED FUNDS OR WIRE TRANSFER. WIRES MUST BE FORMATTED EXACTLY AS SHOWN BELOW, DO NOT USE BANK TO BANK (BBI) INFORMATION. PAYOFFS OVER $1,000,000.00 MUST BE WIRED. PLEASE DIRECT FUNDS TO:

OVERNIGHT DELIVERY  
WASHINGTON MUTUAL BANK, FA  
ATTN: Payoff Unit-Ste 150  
11200 W Parkland Ave  
Milwaukee, WI 53224  
(Ref Name & Loan No. on Check)

WIRE INSTRUCTIONS  
ABA Number: 3222-7162-7  
Beneficiary: Washington Mutual Bank, FA  
Beneficiary Acct: 0950161367  
OBI TEXT  
Name: Gerald Stoves  
Loan: 8464883712

The lien release will be mailed in accordance with applicable laws and the loan documents. The lien will not be released if: 1) any funds previously received are rejected by the bank upon which it is drawn or 2) an insufficient amount is received to pay off the loan in full.

For verification or update of figures, please call Washington Mutual's Customer Care Center at (866) 926-8937. In most cases, updated payoff amounts can be obtained through our automated response system. A Customer Care Specialist may be reached Monday - Friday 7:00 AM to 8:00 PM and Saturday 8:00 AM - 1:00 PM.

XP431-030-$1X

TOTAL P.03