UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH AND DEBRA SCOTT, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 2:05-CV-907 |
| WASHINGTON MUTUAL BANK, F.A., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT WASHINGTON MUTUAL BANK'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND II**

Defendant Washington Mutual Bank ("WAMU"), formerly known as Washington Mutual Bank, F.A., hereby moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts I and II of the First Amended Complaint ("Complaint") filed by Plaintiffs Kenneth and Debra Scott ("Plaintiffs"), with prejudice.

**INTRODUCTION**

In their Complaint, Plaintiffs contend that WAMU breached its contract with Plaintiffs and was unjustly enriched by charging a fee for providing payoff statements to Plaintiffs at Plaintiffs' request. Plaintiffs contend that by charging a fee for providing these payoff statements, WAMU breached a provision in Plaintiffs' loan agreement prohibiting "prepayment penalties" (Count I) and was unjustly enriched (Count II). Plaintiffs further allege (on information and belief) that WAMU breached the Fair Credit Reporting Act (the "FCRA") by charging loan customers different payoff statement fees depending on the contents of their credit reports (Count III).[1]

---

[1] WAMU is not moving to dismiss the FCRA claim, and is simultaneously filing a motion for extension of time to answer Count III until the Court has ruled on this Motion to

Counts I and II must be dismissed because these claims are preempted by federal law. As a federally chartered savings association, WAMU is subject to the exclusive governance of federal law. Because the federal regulatory agency overseeing such entities has expressly "occupied the field" with regard to the fees at issue here, Plaintiffs' state law claims, including its breach of contract claim, are preempted.

Even absent preemption, however, Plaintiffs' claims fail as a matter of law, for independent reasons:

- With respect to the breach of contract claim, the Alabama Supreme Court rejected claims that are indistinguishable from those made by Plaintiffs here in *Stone v. Mellon Mortgage Co.*, 771 So.2d 451, 456 (Ala. 2000). Under *Stone*, Plaintiffs' claims are barred by the voluntary payment doctrine because Plaintiffs did not object to the payoff statement fee or allege a mistake of fact. The *Stone* Court also determined that a similar fee (for faxing the payoff statement) is not prohibited by the contract, thus dooming Plaintiffs' breach of contract claim.

- Because the parties' relationship is governed by contract, and because that contract does not address fees for providing a payoff statement, let alone prohibit such fees, Plaintiffs' unjust enrichment claim fails.

For these reasons, WAMU respectfully submits that Counts I and II should be dismissed, with prejudice.

## BACKGROUND

In October 1987, Plaintiffs entered into an agreement with Louis Shepherd Construction Co. for the construction of a home. (Cmplt. ¶ 6 (attached hereto as Exhibit 1).) The loan to pay for the construction was memorialized in a promissory note (the "Note," attached to the Complaint as Exhibit A) and secured by a mortgage (the "Mortgage," attached hereto as Exhibit 2). (*See also* Cmplt. ¶ 6.) Ultimately, WAMU succeeded Louis Shepherd Construction as the owner of the Note and the party-in-interest to the Mortgage. (Cmplt. ¶ 7.)

---

Dismiss. WAMU denies that it has violated the FCRA, and will demonstrate that it does not charge loan customers different fees at all, much less based on their credit reports.

Sixteen years later, in June 2003, Plaintiffs sought to refinance their loan. (*Id.* ¶ 8.) In connection with the refinancing, Plaintiffs requested a series of "payoff statements" from WAMU to determine the amount necessary to satisfy their obligations to WAMU under the loan. (*Id.* ¶ 9.[2]) On June 17, 2003, WAMU faxed to Plaintiffs the payoff statement at issue here. (A copy of the payoff statement is attached to the Complaint as Exhibit B.) In addition to stating the amounts required to pay the loan in full, the payoff statement advised Plaintiffs that "[t]he following amounts are additional loan servicing fees that are due and owing to Washington Mutual relating to this transaction." (*Id.*) Included among the amounts is a $180 "payoff statement fee." (*Id.*; Cmplt. ¶ 9.) This fee was due and owing irrespective of whether Plaintiffs ultimately decided to pay off their loan prior to maturity.

Plaintiffs apparently paid the $180 payoff statement fee, but they do not allege that they paid the fee under protest. Indeed, Plaintiffs do not allege that they ever complained to WAMU about the payoff statement fee prior to filing this lawsuit in February 2005.

## ARGUMENT

I. **PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT IS PREEMPTED BY FEDERAL LAW.**

WAMU is a *federally* chartered savings association. *See, e.g., Rosenberg v. Washington Mutual Bank, FA*, 849 A.2d 566, 571 (N.J. Super. Ct. App. Div. 2004); *Haehl v. Washington Mutual Bank, FA*, 277 F. Supp. 2d 933, 935 (S.D. Ind. 2003); *Moskowitz v. Washington Mutual Bank, FA*, 768 N.E.2d 262, 264 (Ill. App. Ct.), *petition for leave to appeal denied,* 201 Ill. 2d 574 (2002). As such, it is governed solely and exclusively by regulations issued by the federal Office

---

[2] Plaintiffs suggest that this $180 fee is for the payoff statement attached to the Complaint at Exhibit B. In fact, Plaintiffs previously ordered payoff statements on February 18, 2003; April 29, 2003; and June 12, 2003. Plaintiffs were charged $60 each for three of these four payoff statements.

3

of Thrift Supervision (the "OTS"). *Id.* Congress granted the OTS the authority to craft regulations that might preempt state laws, and the OTS has promulgated regulations that expressly preempt *all* state laws – statutes and common law alike – affecting the imposition and disclosure of servicing fees such as the payoff statement fee charged by WAMU. Accordingly, Counts I and II must be dismissed.

    **A.  Congress Delegated Authority To The OTS To Preempt State Law.**

Under the federal Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 *et seq.* ("HOLA"), Congress expressly delegated authority to the OTS to preempt state laws as they apply to the lending operations of federal savings associations. The grant of preemptive authority, according to the United States Supreme Court, is clear:

> Congress plainly envisioned that federal savings and loans would be governed by what the [OTS] – not any particular State – deemed to be the "best practices." . . . *Thus, the statutory language [of HOLA's § 5(a)] suggests that Congress expressly contemplated, and approved, the [OTS'] promulgation of regulations superseding state law.*

*Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161-62, 102 S. Ct. 3014, 3026-27 (1982) (citations omitted). As shown below, the OTS has preempted the state law claims asserted in Plaintiffs' Complaint.

    **B.  The OTS Has Expressly Occupied The Entire Field Of Lending Regulation.**

Using the authority Congress thus granted it, the OTS has expressly preempted the *entire field* of state lending regulations with respect to federal savings associations such as Washington Mutual:

> *Occupation of field* . . . To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), **OTS hereby occupies the entire field of lending regulation for federal savings associations.** OTS intends to give

4

> federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, *federal savings associations may extend credit* as authorized under federal law, including this part, *without regard to state laws purporting to regulate or otherwise affect their credit activities. . . .* For purposes of this section, "state law" includes *any state statute*, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a) (emphasis added).

The OTS' intent broadly to preempt state laws affecting federal thrifts could not be clearer:

> [I]nstead of being subject to a hodgepodge of conflicting and overlapping state lending requirements, *federal thrifts are free to originate loans under a single set of uniform federal laws and regulations.* This furthers both the "best practices" and safety and soundness objectives of the HOLA by enabling federal thrifts to deliver low-cost credit to the public free from undue regulatory duplication and burden. *At the same time, the interests of borrowers are protected by the elaborate network of federal borrower protection statutes applicable to federal thrifts. . . .*

61 Fed. Reg. 50951-01, 50965 (Sept. 30, 1996) (emphasis added). This preemption extends to any "state law," including laws of general application. 12 C.F.R. § 560.2(a). "State laws" are expressly defined to include "any state statute, regulation, ruling, order or judicial decision." *Id*.

Thus, it is widely recognized that the OTS accepted Congress' invitation to preempt *all* state laws affecting the loan operations of federal savings associations and regulated "comprehensively the operations of these [federal savings] associations, including their lending practices and, specifically, the terms of loan instruments." *de la Cuesta*, 458 U.S. at 167, 102 S. Ct. at 3029. *See also Kupiec v. Republic Fed. Sav. and Loan Ass'n*, 512 F.2d 147, 150 (7th Cir. 1975) (the OTS "has promulgated comprehensive rules and regulations concerning the powers and operations of every federal savings and loan association 'from its cradle to its corporate grave'") (citations omitted); *Monroig v. Washington Mutual Bank, FA*, 800 N.Y.S.2d 416, 418

5

(N.Y.A.D. 2 Dept. 2005) (state law claims arising out of yield spread premium preempted by federal law).

### C. The OTS Has Expressly Extended Preemption To All State Laws Affecting The Imposition Of Payoff Statement Fees.

Regulations promulgated by the OTS provide "[i]llustrative examples" of "the types of state laws preempted." 12 C.F.R. § 560.2(b). The non-exhaustive list includes all state laws "purporting to impose requirements regarding . . . (5) Loan-related fees, including . . . servicing fees," and "(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations . . . [or] credit contracts." 12 C.F.R. § 560.2(b).

Payoff statement fees are "servicing fees," and, as such, are clearly subject to federal preemption. In 1999, the OTS issued an opinion letter concluding that California's Unfair Competition Act was preempted as applied to payoff statement and facsimile fees charged by a federal savings association. *See* OTS Opinion Letter, No. P-99-3 at 16-18 (Chief Counsel Mar. 10, 1999), attached hereto as Exhibit 3 (the "1999 OTS Opinion"). The OTS concluded that payoff statement fees are loan-related fees and "to the extent that [state law] is being used to regulate the imposition of loan-related fees that are part of the [a]ssociations' lending programs, the [state law] is preempted." *Id.* at 16.

The California statute was "inconsistent with one of the objectives of the HOLA and § 560.2(a), namely to allow federal savings associations to exercise their lending powers 'in accordance with a uniform scheme of federal regulation.'" *Id.* The OTS was troubled that "suits based on the charging of loan-related fees, could subject the [a]ssociations to different standards within California as well as in other states. *This result is inconsistent with, and violates the objectives set forth in, § 560.2(a).* This result is also particularly troubling in the areas of . . .

6

loan-related fees, which the OTS has identified in its regulations as areas in which the OTS has determined that federal thrifts should be able to exercise their lending powers in accordance with uniform federal standards of operation." *Id.* at 17 (emphasis added).

A year later the OTS had another opportunity to opine on its regulations' preempting the application of state laws to federal associations' assessment of statement fees. In a second letter, the OTS addressed a New York law that limited payoff statement fees, requiring, for example, that the initial payoff statement be issued free of charge. Addressing the law in the context of fax fees, the OTS concluded that a fee charged for faxing a payoff statement is a loan-related fee and the New York law is preempted as applied to a federal savings association. OTS Opinion Letter, No. P-2000-6 at 2-3 (Chief Counsel Apr. 21, 2000) (the "2000 OTS Opinion"), attached hereto as Exhibit 4. "The payoff statement is an integral part of the lending process," the OTS said, "as it provides the information necessary to satisfy the debt and extinguish the extension of credit." *Id.* at 2.

### D. Plaintiffs' Claims Are Preempted.

In light of both the regulatory language, and the OTS' opinion letters, any state law Plaintiffs seek to apply to the payoff statement fee WAMU charged is subject to federal preemption and must be dismissed. *See, e.g., Moskowitz*, 768 N.E.2d at 266 (breach of contract and consumer fraud claims against WAMU over issuance of payoff statement are preempted).

#### 1. Plaintiffs' Contract Claim Must Be Dismissed As Preempted.

Federal law does not place any restrictions on a federal savings association's ability to impose payoff statement fees, outside of requiring compliance with the terms of the particular note. As noted below, Plaintiffs' Note does not address payoff statements, let alone preclude WAMU from charging a fee for providing the service. Absent a bar in federal law or the express

7

language of the Note, Plaintiffs must be relying on state law as imposing an implicit prohibition on payoff statement fees. Any such state law claim must be preempted by federal law. The 1999 OTS Opinion clearly precludes the application of state law to regulate the imposition of payoff statement fees by federal savings associations. *See Moskowitz*, 768 N.E.2d at 266 (breach of contract claim against WAMU regarding payoff statement fees preempted).

The OTS has explicitly preempted all "state laws" that purport to govern or establish disclosure requirements. 12 C.F.R. § 560.2(b)(9). Federal thrifts like WAMU already are required to comply with "an elaborate network of federal disclosure laws, including the Truth-in-Lending Act ('TILA') and Regulation Z," in addition to the Real Estate Settlement Procedures Act. 1999 OTS Opinion at 14. None of these "elaborate" disclosure statutes imposes any obligation on federal thrifts to disclose, in advance, that a fee may be charged for a payoff statement that may (or may not) be requested by the borrower. Any disclosure obligation that might be imposed under state law runs contrary to the overall federal statutory and regulatory scheme.

The imposition of potentially 50 different state disclosure standards in addition to federal law would patently contravene both the letter and intent of HOLA's implementing regulations, which were expressly intended to replace the "hodgepodge of conflicting and overlapping state lending requirements" with "a single set of uniform laws and regulations." 61 Fed. Reg. 50951, 50965-66. In order to ensure a single set of uniform federal law, state common law claims such as those asserted by Plaintiffs are preempted. Federal law provides the exclusive remedy for any alleged impropriety. *See, e.g., Moskowitz*, 768 N.E.2d at 266 (finding preempted a contract claim premised on alleged failure to disclose an intent to charge a payoff statement fee in part because "[t]he effect of plaintiff's claim would be to impose, at the state level, a substantive

requirement mandating when in the loan process such fees must be disclosed"). *See also Haehl*, 277 F. Supp. 2d at 942 (rejecting as preempted claim that reconveyance fee violated state law where "a decision in plaintiffs' favor would have the same effect as a direct regulation of the fees: to determine the circumstances under which Washington Mutual Bank may charge its customers a reconveyance fee, which is a loan-related fee."); *Rosenberg*, 849 A.2d at 572-73 (claims concerning disclosures in WAMU's billing statements "seek to insert a form of state regulation by compelling a different type of billing statement disclosure" and are preempted by federal law); *Boursiquot v. Citibank FSB*, 323 F. Supp. 2d 350, 352, 356 (D. Conn. 2004) (state claims concerning "fax fees" and claim "that Citibank held excess interest and funds from the Boursiquots' escrow account for almost twenty days" were preempted by HOLA).

Accordingly, Count I is preempted by federal law and should be dismissed.

### 2. Plaintiffs' Unjust Enrichment Claim Is Similarly Preempted.

Plaintiffs' contention, that WAMU "acquired money which in equity and good conscience belongs rightly to Plaintiffs" and has been "unjustly enriched," is equally preempted by federal law. (Cmplt. ¶ 18.) Although not specified in the Complaint, Plaintiffs presumably contend that WAMU's receipt of the payoff statement fee is "unjust" on the same theory underlying their breach of contract claim. In any event, Count II is preempted for the same reasons that Count I is preempted and must be dismissed.

## II. PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED BECAUSE THE PAYOFF STATEMENT FEES ARE NOT PROHIBITED BY THE CONTRACT.

In Count I, Plaintiffs contend that WAMU breached its contract with Plaintiffs by charging the payoff statement fee. (*See* Cmplt. ¶¶ 13-16.) Plaintiffs apparently advance two alternative theories for the breach of contract claim: (A) the payoff statement was "not

9

authorized by the Note" and (B) the payoff statement constitutes a prohibited prepayment penalty. (*Id.* ¶ 15.) These arguments fail as a matter of law.

### A. WAMU May Charge Fees Not Expressly Addressed In The Note.

Count I assumes that the Note and Mortgage prohibit the assessment of a payoff statement fee because they did not expressly allow for the assessment of such a fee. This claim was directly rejected by the Alabama Supreme Court in *Stone* and must be dismissed as a matter of law here. There, the plaintiffs similarly contended that "when they executed the note ... the parties did not contemplate fax fees when they entered into the loan contract" and that the charging of a fax fee therefore "violates the terms of the note." *Stone*, 771 So.2d at 455. Rejecting this argument, the Court adopted the rationale applied by an earlier federal court opinion:

> It would be difficult for form notes and mortgages that cover long time periods to anticipate and include each and every such incidental special request made by a borrower. Here the plaintiff was asking for faxed payoff statements in order to receive refinancing and take advantage of lower interest rates. To say that a borrower can make such requests for his or her own benefit, yet, under a principle such as *contra proferentum*, never allow the mortgage servicer to charge for the services unless they are specified in the loan documents would be an unreasonable interpretation of the contracts.

*Id.* (quoting *Cappellini v. Mellon Mortgage Co.*, 991 F. Supp. 31, 39-40 (D. Mass. 1997)). To the contrary, "it is not forbidden by the language of the Note and Mortgage to charge a fee for the extra services." *Id.*[3]

---

[3] Other courts have similarly held that the absence of express authority for charging a fee does not preclude a lender from charging the fee. "We do not believe that plaintiffs' mortgages and notes entitled them to receive free of charge any service not specifically referenced in the contract." *Krause v. GE Capital Mortgage Servs., Inc.*, 731 N.E.2d 302, 310 (Ill. App. Ct. 2000) (fees charged for issuance of payoff statement and facsimile transmission of the statement are not in breach of contract). Applying *Krause*, the Illinois Appellate Court recently held that WAMU's imposition of a fee for payoff statements does not breach a note or mortgage agreement: "Although [plaintiff's] mortgage did not specifically permit payoff statement fees, it

10

Here, Plaintiffs' Note does not address the issuance of payoff statements or fees that may be charged for providing such a service. (Cmplt. Ex. A.) As in *Stone*, the mere absence of express authority to charge such a fee cannot form the basis of a breach of contract claim.

**B.      The Payoff Statement Fee Does Not Constitute A Prepayment Penalty.**

Plaintiffs alternatively contend that the imposition of a payoff statement violates an express provision of the Note. (Cmplt. ¶¶ 1, 15.) Although Plaintiffs do not specify any particular provision of the Note or Mortgage, they apparently contend that WAMU violated Section 4 of the Note, which provides:

> 4.   BORROWER'S RIGHT TO PREPAY.
> I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." . . .
>
> I may make a full prepayment or partial prepayments without paying a prepayment charge. . . .

(*See* Cmplt. Ex. A, Note at 1.) Count I rests, therefore, on the proposition that the fee charged by Washington Mutual for performing, at Plaintiffs' request, the additional service of preparing a payoff statement constitutes a prohibited "prepayment charge."

This theory is hardly new, having been raised – and rejected – in many jurisdictions, including in the context of payoff statement fees charged by WAMU. For example, in *Stone*, the Supreme Court cited the existence of a prohibition on prepayment penalties, *see* 771 So.2d at 454, but nonetheless held that charging a fee for transmitting a payoff statement did not violate

---

did not prohibit them either." *Pedroza v. Washington Mutual*, Case No. 1-03-2138, at 15 (Ill. App. Ct. Dec. 14, 2004) (attached hereto at Exhibit 5). *See also Cain v. Source One Mortgage Servs. Corp.*, No. 43041-6-I, 1999 WL 674776, at *1 (Wash. Ct. App. Aug. 30, 1999) ("A lender who faxes a payoff statement at the borrower's request may charge a fax fee without violating the loan contract, even though the contract does not enumerate the fax fee as a responsibility of the borrower") (attached hereto at Exhibit 5); *Westfall v. Chase Lincoln First Bank, N.A.*, 258 A.D.2d 299, 300 (N.Y.A.D. 1999) (New York appellate court holding that mortgage did not prohibit charging fax fee).

11

the parties' contract. *See also, e.g., Pedroza,* Case No. 1-03-2138, at 110-15 (payoff statement fee charged by WAMU is not a prepayment penalty); *Krause*, 731 N.E.2d at 307-310 (fax fee and payoff statement fees do not constitute prepayment penalties); *Colangelo v. Norwest Mortgage, Inc.*, 598 N.W.2d 14, 17 (Minn. Ct. App. 1999) (fax fee was not prepayment penalty); *Jerik v. Columbia Nat'l, Inc.*, No. 97 C 6877, 1999 WL 1267702, at *2-3 (N.D. Ill. Sept. 30, 1999) (payoff statement charges are not prepayment penalties) (attached hereto at Exhibit 5); *Cappellini*, 991 F. Supp. at 38 (fax and payoff statement fees are not prepayment charges).

*Krause* is illustrative of these courts' reasoning. There, as here, the loan documents prohibited "prepayment charges." 731 N.E.2d at 304. The defendant charged a fee for providing a written payoff statement, and the plaintiffs alleged that this "charge" violated the mortgage's prohibition of any prepayment charges. *Id.* at 304. The Illinois Appellate Court rejected the plaintiffs' position, concluding that the payoff statement fee was assessed for the service of preparing the payoff statement and was not a penalty or charge for pre-paying the mortgage:

> A prepayment penalty is one that is peculiarly associated with prepayment alone, it is assessed at the time of prepayment, and it would not be charged if the loan was paid at maturity. Fees that could be imposed in connection with a payment in full at maturity, fees that are an addition to the loan principal, or fees that must be paid regardless of whether the loan is prepaid do not constitute prepayment penalties.

*Krause*, 314 Ill. App. 3d at 382-83, 731 N.E.2d at 307-08 (citations omitted).

Relying on *Krause*, the Illinois Appellate Court recently held that the fees charged by WAMU for issuance of a payoff statement did not constitute "prepayment charges" under the standard language Note. *Pedroza*, Case No. 1-03-2138, at 10-14. "The payoff statement fee that Washington Mutual charged Pedroza was a fee assessed for a special service at the time the service was rendered. It was not assessed because Pedroza paid off her loan early." *Id.* at 14.

12

This case is no different. The Complaint and its attachments make clear that Plaintiffs or their agent requested the payoff statement from WAMU, and that WAMU performed the requested service. (*See generally* Cmplt.) "The fax and statement fees are not prepayment charges, but are rather charges for special services outside of the basic service agreement provided to the borrower. . . . Simply because a fee is incurred during the prepayment of the loan does not necessarily make it a prepayment charge or penalty for prepaying the loan." *Capellini*, 991 F. Supp. at 38. The charge by WAMU was listed on the Payoff Statement and would have been owed even if Plaintiffs had opted not to pay off the loan prior to maturity. (*See* Cmplt. Ex. B, Payoff Statement at 1.)

The payoff statement, attached to Plaintiffs' Complaint, further evidences that the payoff statement fee is not tied to the Plaintiffs' early payment of the loan. In one section, the statement lists the amounts "required to pay this loan in full on 06/27/2003." (*Id.*) The statement separately advises that other amounts, including the payoff statement fee "are additional loan servicing fees that are due and owing to Washington Mutual relating to this transaction." (*Id.*) Consequently, Plaintiffs cannot allege a breach of the Note simply by characterizing the payoff statement fee as a prepayment penalty.

This Court should rule as a matter of law that the payoff statement fee does not violate the Note and dismiss Count I with prejudice.

### III.   COUNT II FOR UNJUST ENRICHMENT MUST BE DISMISSED.

Count II asserts that WAMU "acquired money" that "belongs rightly to Plaintiffs" and was "unjustly enriched." (Cmplt. ¶ 18.) Count II is deficient foremost because a party cannot recover on a claim of unjust enrichment where there is an enforceable express contract between the parties. *See, e.g., Kennedy v. Polar-BEK & Baker Wildwood Partnership*, 682 So.2d 443,

13

447 (Ala. 1996) (implied contracts will not generally be recognized where parties' relationship is governed by express contract). Given that Plaintiffs acknowledge the existence of an express contract with WAMU, no claim for unjust enrichment may be had.

Separately, the Alabama Supreme Court had stated that "retention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched." *Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837, 843 (Ala. 2004). Plaintiffs here have not alleged any facts establishing a mistake of fact or misreliance on their part or that WAMU engaged in fraud, coercion or abuse of a confidential relationship. Accordingly, Count II must be dismissed.

### IV. THE ALABAMA SUPREME COURT HAS MADE CLEAR THAT PLAINTIFFS' CLAIMS ARE BARRED BY THE VOLUNTARY PAYMENT DOCTRINE.

Payments voluntarily made to another party cannot be recovered absent a showing that the payments were made because of mistake of fact, fraud, duress, or extortion. *Stone*, 771 So.2d at 456; *Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So.2d 534, 537 (Ala. 1995). The Alabama Supreme Court's application of this doctrine in *Stone* requires dismissal of Plaintiffs' claims.

In *Stone*, the plaintiffs filed a putative class action suit against a mortgage company contesting fees charged in conjunction with the company's facsimile transmission of payoff statements (referred to as a "fax fee"). Addressing the voluntary payment doctrine, the Court held that "[b]ecause the [plaintiffs] did not object to the fax fee once their loan transaction had closed and their alleged duress had been lifted, and because they have shown no mistake of fact, the voluntary payment doctrine defeats their claims based on theories of unjust enrichment and

14

money had and received." *Stone*, 771 So.2d at 458-59.  The *Stone* court recognized that the doctrine is equally applicable to claims for breach of contract.  *Id.* at 456.

The voluntary payment doctrine defeats Plaintiffs' similar claims here.  Although the Complaint is silent on this point, given their claims that WAMU was unjustly enriched, Plaintiffs presumably contend that they paid the payoff statement fee.  There is no allegation that Plaintiffs paid the fee under protest, or that they paid the fee because of mistake of fact, fraud, duress, or extortion.  In sum, Plaintiffs failed to plead facts sufficient to avoid dismissal based on the voluntary payment doctrine.  Accordingly, Counts I and II should be dismissed.

## CONCLUSION

For all these reasons, Defendant Washington Mutual Bank, formerly known as Washington Mutual Bank, F.A., respectfully requests that this Court dismiss Counts I and II of Plaintiffs' First Amended Complaint.

Dated:  September 29, 2005                                     Respectfully submitted,

> By:   /s/Paul Richard Hartley
>         Paul Richard Hartley (HAR050)
>         Attorney for Defendant
>         Washington Mutual

OF COUNSEL
P. Richard Hartley (Alabama Bar    #HAR050)
Hartley & Hickman
415 East Commerce Street, Suite 101
P.O. Box 583
Greenville, Alabama  36037-0583
Telephone:  (334) 382-6618
Fax:  (334) 382-5183

<u>OF COUNSEL</u>:
Scott T. Schutte (Illinois Bar #6230227)
(moving for admission *pro hac vice*)
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois 60611
Telephone:  (312) 222-9350
Fax:  (312) 840-7301

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date served the above and foregoing on:

    Randall K. Bozeman
    Bozeman & Bozeman
    P. O. Box 337
    Hayneville, AL 36040-0337

    Wilson F. Green
    Battle Fleenor Green Winn & Clemmer LLP
    The Financial Center
    505 North 20th Street, Suite 1150
    Birmingham, Alabama 35203

by placing copies of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this 29th day of September, 2005.

| | |
|---|---|
| By: | /s/Paul Richard Hartley |
| | OF COUNSEL |

Case 2:05-cv-00907-MHT-CSC   Document 7   Filed 09/29/2005   Page 17 of 17