C

NOTE: UNPUBLISHED OPINION, SEE RCWA 2.06.040

Court of Appeals of Washington, Division 1.
Michael CAIN, Individ. & on Behalf of Class, Appellant,
v.
SOURCE ONE MORTGAGE SERVICES CORP., a foreign corporation, Respondent.
**No. 43041-6-I.**

Aug. 30, 1999.

Appeal from Superior Court of King County, docket No 97-2-31552-2, judgment or order under review, date filed 06/19/1998; Michael J. Trickey, Judge.

Roblin J. Williamson and Williamson & Williams, Seattle, WA, for Appellant(s).

Stephen M. Rummage and Davis Wright Tremaine, Seattle, WA, for Respondent(s).

UNPUBLISHED OPINION

BECKER.

*1 A lender who faxes a payoff statement at the borrower's request may charge a fax fee without violating the loan contract, even though the contract does not enumerate the fax fee as a responsibility of the borrower.

Source One Mortgage Services Corporation is a successor in interest to the holder of a note and deed of trust signed by appellant Michael Cain in May, 1991 to obtain a home loan. Upon Cain paying "all sums secured" by the note and deed of trust, Source One was obligated by the terms of its loan contract to release Cain from the note and deed of trust, and to reconvey the property "without charge" to Cain.

Cain sought to refinance his home loan in May 1993. Old Republic Title, Ltd., the escrow agent in the transaction, obtained Cain's signature upon a release of information form. The word "RUSH" was stamped in boldface on the form. On May 8, Old Republic sent to Source One a "Request for Payoff/Demand Statement". That document, accompanied by Cain's authorization to release information, requested a faxed response from Source One disclosing information about Cain's account with Source One as "soon as possible". In response, Source One faxed a copy of a "Payoff Statement" to Old Republic, and mailed a copy to Cain's home address. The payoff statement itemized, as part of the total amount owed, "Fax Fees" in the amount of $15. Cain had not previously been advised he would be charged a fee for faxing. He paid the fax fee without inquiry or objection in the course of refinancing his loan. In July 1996, Cain filed a class action lawsuit against Source One. His primary allegation was that Source One, as a condition of releasing its clients, improperly charged them fees not specifically mentioned in the note and deed of trust. Cain asserted claims of breach of contract, violation of the Consumer Protection Act, and unjust enrichment. In November 1997, he obtained a voluntary dismissal of his suit without prejudice. He refiled the same suit in December, 1997. The trial court granted Source One's motion for a summary dismissal of all claims. Cain appeals.

We apply the usual de novo standard review on appeal from summary judgment. See *Green v. A.P.C.,* 136 Wash.2d 87, 94, 960 P.2d 912 (1998). Unjust enrichment claims have a three year statute of limitations. RCW4.16.080(3). CPA claims have a four year statute of limitations. RCW19.86.120. A cause of action accrues "when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Allen v. State,* 118 Wash.2d 753, 758, 826 P.2d 200 (1992). Cain knew all the relevant facts in this case when Source One imposed the fax fee in May 1993. Because Cain did not file his second lawsuit until November 1997, his consumer protection act and unjust enrichment claims are time barred, and the trial court properly dismissed them.

*2 The breach ofcontract claim, subject to a six year statute of limitations period under RCW 4.16.040, is not time barred. Cain contends that the imposition of the fax fee breached Source One's promise to reconvey the property "without charge" upon payoff of the loan, and required him to pay more than "all sums secured" by the note and deed of trust. He argues there are material issues of fact regarding breach of contract because the deed of trust and note do not enumerate the $15 fax fee as the borrower's responsibility.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A federal district court in *Cappellini v. Mellon Mortgage Co.*, 991 F.Supp., 31, 39-40 (D.Mass.1997), disposed of the same argument in the same circumstances. A plaintiff, seeking to refinance his house, paid fees totaling $40 for faxes of payoff reports from the servicing company having to do with the plaintiff's prior mortgage. The closing attorney, selected by the new lender, ordered the payoff reports and passed the fax fees through to the plaintiff. *Cappellini*, 991 F.Supp. at 35. The plaintiff argued that charging fax fees breached the contract because the contracts did not expressly permit the imposition of fax fees. The court concluded that even upon construing the contracts against the lender, as drafter of the contract, the lender could still charge the fees:

> It would be difficult for form notes and mortgages that cover long time periods to anticipate and include each and every such incidental special request made by a borrower. Here the plaintiff was asking for faxed payoff statements in order to receive refinancing and take advantage of lower interest rates. To say that a borrower can make such requests for his or her own benefit, yet, under a principle such as contra proferentem [FN1], never allow the mortgage servicer to charge for the services unless they are specified in the loan documents would be an unreasonable interpretation of the contracts.
>
> FN1. The rule of "contra proferentem" means that in written documents "an ambiguous provision is construed most strongly against the person who selected the language." Black's Law Dictionary, 327 (6th ed.1990).

*Cappellini v. Mellon Mortgage Co.*, 991 F.Supp. at 39-40.

We adopt the reasoning of Cappellini. Through his escrow agent, Cain requested an expedited delivery of the payoff statement by fax. Faxing the statement was an accommodation of Cain's special request. Charging for the service was not a breach of contract.

*Cain relies on Rumford v. Countrywide Funding Corp.*, 287 Ill.App.3d 330, 335- 36, 678 N.E.2d, 222 Ill.Dec. 757, appeal denied, 174 Ill.2d 594, 227 Ill.Dec. 17, 686 N.E.2d 1173 (1997). There, the court found an issue of fact concerning whether certain fees charged by a mortgage company were fees for processing a special request for a statement, as claimed by the company, or extra fees charged for reconveying the property, over and above the borrower's payment of all sums secured. There is no similar issue of fact here. The payoff statement lists the added fees charged as "Fax Fees", and Source One has never claimed they were anything else.

***3** Cain argues that listing the fax fee on the payoff statement gives the misleading impression that Source One will not release the loan unless that fee is paid. He fails, however, to show, by argument or citation to authority, how listing the fax fee on the payoff statement is a breach of contract. Whether it is an unfair or deceptive practice is an issue we do not reach because Cain's consumer protection act claim is barred by the statute of limitations.

Source One did not breach its loan contract with Cain by charging him for an extra service that he requested. The trial court properly dismissed the breach of contract claim.

Affirmed.

BAKER & GROSSE, JJ., concur.

97 Wash.App. 1014, 1999 WL 674776 (Wash.App. Div. 1)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Lou JERIK on behalf of himself and all others similarly situated, Plaintiff,
v.
COLUMBIA NATIONAL, INC., and John Does 1-10, Defendants.
**No. 97 C 6877.**

Sept. 30, 1999.

*MEMORANDUM OPINION AND ORDER*
WILLIAMS, J.

*1 Plaintiff Lou Jurik ("Jurik") brings this five count, putative class action against Defendant Columbia National, Inc. ("Columbia"), a Maryland corporation, challenging the defendant's practice of charging a $10 quote fee and a $5 fax fee for faxing payoff statements to persons other than the borrower. In Count I of his amended complaint, Jurik alleges that Columbia breached its contract with Jurik. In Counts II and III, Jurik claims that Columbia violated the federal RICO statute, 18 U.S.C. § 1962(c). Jurik makes a claim, in Count IV, for restitution and other appropriate damages. Finally, in Count V, Jurik alleges that defendant violated the Maryland Consumer Protection Act, Md. Com. Law § 13-101 et seq.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Columbia moves for summary judgment on all counts. Also Pursuant to Rule 56, Jurik moves for partial summary judgment on Count I. For the reasons set forth below, the court denies Jurik's motion and grants Columbia's motion in full.

Background

On April 14, 1993 Jurik and his wife entered into a note and a mortgage loan with Painewebber Mortgage Finance, Inc. (Pl.'s 12(M) ¶ 7.) On August 19, 1995, Columbia acquired servicing of Jurik's mortgage loan. (Pl.'s 12(M) ¶ 8.) Both Jurik's note and mortgage were written on Federal National Mortgage Association ("FNMA" / Federal Home Loan Mortgage Corporation ("FHLMC") forms. (Pl.'s 12(M) ¶ 9.) Paragraph 4 of the Note, entitled Borrower's Right to Prepay, specifically provides for the borrower to pay off the loan prior to maturation: "I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a 'prepayment'.... I may make a full prepayment or partial prepayments without paying any prepayment charge...." (Pl.'s 12(M), App. A ¶ 4.)

The mortgage also contains language dealing with authorized and unauthorized charges. (Pl.'s 12(M), App. B.) Paragraph One, entitled "Payment of Principal and Interest; Prepayment and Late Charges", provides only for prepayment charges that are due under the Note. (Pl.'s 12(M), App. B ¶ 1.) Paragraph Four, entitled "Charges; Liens", lists charges for which the borrower is responsible. (Pl.'s 12(M), App. B ¶ 4.) The Mortgage states, in part: "Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any." (Pl.'s 12(M), App. B ¶ 4.) The mortgage obligates the borrower to make these and various other specific payments in connection with the loan. (Pl.'s 12(M), App. B.). The mortgage does not contain any provision which authorizes the mortgage holder to charge the borrower a fee for prepayment or to charge the borrower for a payoff letter. (Pl.'s 12(M) ¶¶ 13, 15, 16.)

On August 28, 1997, Jurik sold his home, and as part of this transaction, he paid off his mortgage loan with Columbia. (Pl.'s 12(M) ¶¶ 18, 22.) Attorney Stephen Newland ("Newland") represented Jurik in selling his house and paying off his loan. (Def .'s 12(M) ¶ 7.) Newland faxed a letter to Columbia on August 19, 1997 requesting payoff information on Jurik's loan. (Def.'s 12(M) ¶ 9.) Columbia faxed a payoff statement to Newland on August 20, 1997. (Def.'s 12(M) ¶ 10.) Included among the payoff statement charges were a "fax fee" of $5 and a "quote fee" of $10. (Def.'s 12(M) ¶ 10.) Jurik paid Columbia the total amount listed on the payoff statement, including the fax fee and the quote fee, (Def.'s 12(M) ¶ 15), but argues that he paid the fee under protest. (Pl.'s 12(M) ¶ 28; *but see* Def.'s 12(M) ¶¶ 15-17 (stating that plaintiff did not protest the fees)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***2** Columbia charges borrowers a fax fee whenever borrowers or their agents request a faxed copy of a payoff statement. (Def.'s 12(M) ¶ 11.) Columbia will send a payoff statement to the borrower at no charge, but it charges a quote fee if someone other than the borrower makes the request for a payoff statement. (Def.'s 12(M) ¶ 11.)

Analysis

Jurik moves the court to enter summary judgment on Count 1 under Rule 56 of the Federal Rules of Civil Procedure. Columbia moves the court to enter summary judgment on its behalf for all five counts. The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). This court will not render summary judgment if "a reasonable jury could return a verdict for the nonmoving party." *Sullivan v. Cox,* 78 F.3d 322, 325 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In ruling on a motion to for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *See Bratton,* 77 F.3d at 171 (citation omitted); *Sullivan,* 78 F.3d at 325 (citation omitted).

On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Hudson Ins. Co. v. City of Chicago Heights,* 48 F.3d 234, 237 (7th Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U .S. 317, 323 (1986)). Then the burden shifts to the nonmoving party, which "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); accord, *NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 234 (7th Cir.1995) (citations omitted).

*I. Breach of Contract*

Jurik argues that he is entitled to summary judgment on Count I for breach of contract because the fax and quote fees that Columbia charged him were prepayment penalties, which are expressly forbidden by the note. Jurik also claims that Columbia breached their contract by charging him fees that were not authorized by the mortgage agreement.

A charge is a prepayment penalty if the "charge imposed at the time of prepayment [was one] that would not [have been] imposed if the note were paid at maturity instead of at an earlier date." *Goldman v. First Fed. Sav. & Loan Ass'n,* 518 F.2d 1247, 1252 (7th Cir.1975). Unfortunately, few cases have dealt directly with whether fax and quote fees such as the one Columbia charged Jurik constitute prepayment penalties. However, the courts in *Cappellini v. Mellon Mortgage Co.,* 991 F.Supp. 31 (D.Mass.1997), and *Colangelo v. Norwest Mortgage, Inc.,* 598 N.W.2d 14 (Minn.Ct.App.1999), applied the *Goldman* test in situations similar to Jurik's.

In *Cappellini,* the court rejected the idea that a $15 fax fee and $25 duplicate statement fee should be considered a prepayment penalty. 91 F.Supp. at 38. The mortgage and note in *Cappellini* were identical to the ones that Columbia provided Jurik. *See id.* at 34-35. For example, the fax and duplicate statement fees were not enumerated in the note or mortgage. *See id.* at 35. The court ruled that prepayment penalties are charges that are "peculiarly associated with prepayment alone." *Id.* at 38. The *Cappellini* court fax and statement fees are assessed in situations unrelated to prepayment. *See id.* Therefore, it ruled that "fax and statement fees are not prepayment charges, but are rather charges for special services outside of the basic service agreement provided to the borrower by [the lender] with respect to-*but not exclusively related to the prepayment* of-a loan." *Id.* (emphasis added).

***3** Plaintiff argues that in *Cappellini* the borrower was only charged for the second payoff request while in the instant case the borrower could be charged on the first request. The dispositive issue under *Goldman,* however, is whether the fee is charged for prepayments but not at maturity. There is nothing about fax fees or quote fees that makes them unique to prepayments. Columbia could, and probably does, charge these fees at maturity if the borrower requests these services.

Likewise, in *Colangelo,* the court ruled that a $10 fax charge was not a prepayment penalty. *See* 598 N.W.2d at 19. The *Colangelo* court found that a mortgage could be paid off without paying the fax fee; the charge was simply a fee for special services, which is often assessed in situations

unrelated to a mortgage prepayment. *See id.* at 17. "The fact that a cost is imposed on the borrower at the time the loan is prepaid does not render the cost a penalty; a charge is a prepayment penalty if the cost 'would be imposed if the note were paid at maturity instead of an earlier date." ' *Id.* (quoting Goldman v. First Fed. Sav. & Loan Ass'n, 518 F.2d 1247, 1252 (7th Cir.1975)).

Jurik argues that the fax and quote fees Columbia charged him are prepayment penalties because it was necessary for him to have a written copy of the payoff statement faxed to his attorney. (Pl.'s 12(M) ¶¶ 25, 26.) Jurik asserts that using a verbal agreement would violate the statute of frauds and make it impossible for a borrower to accomplish a payoff through refinancing or sale. (Pl.'s 12(M) ¶ 21.) He suggests that it is customary to fax a payoff statement directly to the closing agent because "too many closings would be frustrated if the closing agent had to wait and receive the payoff statement by mail." (Pl.'s 12(M) ¶ 21, App. K.) Furthermore, he claims that it has become customary since the early 1990s to fax the payoff statement to the closing agent. (Pl.'s 12(M) ¶ 21; App. K.)

Jurik may be correct that a written payoff statement was necessary for him to pay off his mortgage. He may also be correct that it is customary for the payoff statement to be faxed to the closing agent. However, neither the fact that he needed a written payoff statement nor the fact that it is customary for payoff statements to be faxed to closing agents make the $5 fax fee and the $10 quote fee a prepayment penalty. These fees were not assessed to Jurik because he paid his loan prior to maturation. Instead, they are charges for the convenience of having the payoff statement faxed to Newland rather than mailed directly to Jurik. *See* Cappellini, 991 F.Supp. at 38, 40 (ruling that charging a fee for a "convenience" service was not a prepayment penalty); *Colangelo,* 498 N.W.2d at 17 (finding that the fax fee was a special service because borrower could obtain, free of charge, one payoff statement by mail). The mere fact that these fees were incurred while Jurik was in the process of repaying his mortgage does not make them prepayment penalties. Furthermore, both the fax fees and the quote fees could have been charged to Jurik in relation to an activity unrelated to the prepayment of his mortgage. *See* Goldman, 518 F.2d at 1252 (ruling that a fee is not a prepayment penalty if also assessed, for example, at maturity). Therefore, neither the $5 fax fee nor the $10 quote fee constitutes a prepayment penalty.

***4** Plaintiff argues that the district court's opinion in Sandlin v.. Shapiro & Fishman, 919 F.Supp. 1564 (M.D.Fla.1996), should control. In *Sandlin,* the court, in denying a motion to dismiss, ruled that a $60 payoff fee charged by a law firm in the collection of an outstanding mortgage debt could constitute an illegal prepayment penalty. *See id.* at 1569. This case is inapposite to Jurik's situation. First, *Sandlin* is a motion to dismiss, which accepts as true all allegations on the face of the complaint. Second, a payoff fee that is only charged for prepayment, or in this case for collection, is a quintessential prepayment penalty. It would not have been charged if the borrower had made all of his payments.

Jurik also relies on a maxim of contract construction, *expressio unius est exclusio alterius,* or "the mention of one thing excludes another", to argue that the fax and quote fees are not authorized under the terms of the mortgage. Under this maxim, if certain provisions are specified in a contract, an intention to exclude all other like provisions may be inferred. *See Black's Law Dictionary* 581 (6th ed.1990). Because the mortgage includes servicing-related functions and the fees for those functions, Jurik argues that any fees not listed in the mortgage are unauthorized.

Furthermore, Jurik claims that another rule of contract construction, *contra proferentum,* requires that the mortgage agreement be construed against Columbia. Under *contra proferentum,* an ambiguous provision in a written document must be construed unfavorably against the party which drafted the language. *See* Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995); *see also Black's Law Dictionary* 327 (6th ed.1990).

There is no need to resort to rules of construction such as *contra proferentum* or *expressio unius est exclusio alterius,* however, unless the terms of the contract are substantially and genuinely ambiguous. *See* Pitcher v. Principal Mut. Life Ins., 93 F.3d 407, 418 (7th Cir.1996); *see also,* Baker v. America's Mort. Serv. Inc., 58 F.3d 321, 327 (7th Cir.1995). The mere fact that the parties do not agree on the meaning

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the contract terms does not render it ambiguous. *See* Bourke v. Dun & Bradstreet Co., 159 F.3d 1032, 1036 (7th Cir.1998). Instead, a contractual provision must be subject to more than one reasonable interpretation to be considered ambiguous. *See id.* In this case, the contract language is clear and unambiguous. The mortgage and the note simply lists some of the charges that are authorized and some of the charges that are unauthorized. Consequently, there is no need to resort to rules of contract construction.

Ironically, even if the court were to apply these rules of construction, as Jurik suggests, the court could construe the mortgage as allowing Columbia to charge fax and quote fees. In *Colangelo,* the court pointed out that the *maxim expressio unius est exclusio alterius* doctrine works "as a double edged sword" in cases such as this one. *See* Colangelo, 598 N.W.2d at 18. The mortgage not only mentions specific fees that the borrower must pay but also mentions specific charges that the mortgage-servicing company cannot collect. *See id.* If the court were to apply *expressio unius est exclusio alterius,* fees that are not specifically prohibited by the mortgage contract, such as the fax fee and the quote fee, would likely be authorized. *See id.* The mortgage and note cannot anticipate every service request made by a borrower. *See* Cappellini, 991 F.Supp. at 39. The borrower is not entitled to services from the lender free of charge just because the lender did not anticipate the request. *See* Cain v. Source One Mortgage Servs. Corp., No. 43041-6-1, 1999 WL 674776, at *1 (Wash.Ct.App. Aug. 30, 1999) (ruling that "[a] lender who faxes a payoff statement at the borrower's request may charge a fax fee without violating the loan contract, even though the contract does not enumerate the fax fee as a responsibility of the borrower"). Therefore, because the fax and quote fees are neither prepayment penalties nor unauthorized charges, they do not violate the terms of the contract. Therefore, Jurik's claim for breach of contract must fail.

*II. Remaining Counts: RICO, Restitution and Consumer Fraud*

*5 Once it is established that there is no breach of contract because fax and quote fees are neither prepayment penalties nor unauthorized by the mortgage agreement, Jurik's other claims must also fail. All of the other claims are predicated on the fact that Columbia committed some wrong by charging Jurik to fax the payoff statement to Jurik's attorney.

To properly state a RICO claim, Jurik would have to "show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). Racketeering activity is defined as "any act indictable under certain specified federal statutes." 18 U.S.C. § 1961(1)(b). Jurik alleges that Columbia used the mail or the telephone to perpetrate its fraudulent scheme, violating federal mail and wire fraud statutes. *See* McDonald v. Schencker, 18 F.3d 491, 494 (7th Cir.1994) (alleging mail fraud); Scott Int'l, Inc. v. Sifers, No. 86 C 9233, 1988 WL 96542, at *2 (N.D.Ill. Sept. 15, 1988) (alleging wire fraud). Because this court has ruled that the fax and quote fees do not violate the contract between Jurik and Columbia, there is no fraudulent scheme; therefore, pl cannot prove wire or mail fraud. Consequently, Columbia cannot be charged under the RICO statute for charging fax and quote fees because this activity does not violate any federal statute.

Similarly, Jurik's claim for consumer fraud under the Maryland Consumer Protection Act ("Act") also fails. [FN1] The Act authorizes "any person [to] bring an action to recover for injury or loss sustained by him as a result of a practice prohibited by this [Act]." Md. Com. Law § 13-408. The Act prohibits, inter alia, "[u]nfair or deceptive trade practices includ[ing] any (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13-301(1). Because the court has ruled that Columbia's fax and quote fees do not constitute a deceptive act or practice, this claim also fails.

FN1. Plaintiff's amended complaint alleges that defendant violated the Maryland Consumer Protection Act. Plaintiff's response to defendant's motion for summary judgment, however, discusses the Illinois Consumer Fraud and Deceptive Practices Act. Because the amended complaint only alleges a violation of the Maryland statute, the court will not address the Illinois statute.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Moreover, Jurik's request for restitution damages fails because Columbia had no illegal gains. Jurik alleged that he was due restitution and other damages because Columbia "illegally obtained" the fax and quote fees. (Am.Compl.¶ 90.) The court has ruled that the fax and quote fees do not violate the contract between the parties; therefore, the fees were not "illegally obtained." [FN2]

FN2. Furthermore, because the fax and quote fees are not prepayment penalties or unauthorized charges, it is unnecessary for the court to reach the question of whether or not the voluntary payment doctrine is applicable.

Conclusion

For the reasons stated above, the court denies plaintiff's motion for partial summary judgment [34-1] and grants defendant's motion for summary judgment [33- 1] on all counts. The date for filing any motions or appeals runs from the date this Memorandum Opinion and Order is entered.

1999 WL 1267702 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:97CV06877 (Docket) (Oct. 01, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

No. 1-03-2138

IN THE APPELLATE COURT OF ILLINOIS
FIRST DISTRICT, SECOND DIVISION

| | |
|---|---|
| GLADYS PEDROZA, Plaintiff-Appellant, v. WASHINGTON MUTUAL BANK, FA Defendant-Appellee. | Appeal from the Circuit Court of Cook County, Illinois<br>No. 01 CH 19483<br>Honorable Sophia H. Hall, Presiding |

**ORDER**

This matter coming before the Court on Defendant-Appellee Washington Mutual Bank, FA's Motion to Have Order Published as an Opinion,

IT IS HEREBY ORDERED that Defendant-Appellee's Motion to Have Order Published as an Opinion is ~~GRANTED~~ / DENIED.

ORDER ENTERED
JAN 1 2 2005
APPELLATE COURT, FIRST DISTRICT

Order prepared by:
Brian D. Hansen
Jenner & Block LLP (#05003)
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

NOTICE
The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

SECOND DIVISION
DECEMBER 14, 2004

No. 1-03-2138

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| GLADYS PEDROZA, Plaintiff-Appellant, | Appeal from the Circuit Court of Cook County. |
| v. | No. 01 CH 19483 |
| WASHINGTON MUTUAL, Defendant-Appellee. | The Honorable Sophia H. Hall, Judge Presiding. |

ORDER

In November 2001, the plaintiff, Gladys Pedroza, sued the defendant, Washington Mutual Bank, for breach of contract after it charged her a $60 fee for a written payoff statement. In January 2003, Washington Mutual, filed a motion for summary judgment. The trial court, relying on the holding in Krause v. GE Capital Mortgage Services, Inc., 314 Ill. App. 3d 376, 731 N.E.2d 302 (2000), granted the motion. Pedroza appeals, arguing the court erred in granting summary judgment. Specifically, Pedroza argues Krause does not control because (1) a prepayment charge is different from a prepayment penalty, (2) her mortgage note did not specifically authorize Washington Mutual to charge a fee for a written payoff statement, and (3) written payoff

statements are customarily required by title companies at closing. We affirm.

I. Background

In 1998, Pedroza executed a mortgage note payable to the United Savings of America. The note provided that Pedroza could "make a full payment or partial payments without paying any prepayment charge." At some point, which is not clear from the record, Washington Mutual became the servicer of Pedroza's note.

Washington Mutual is a federally chartered savings association that, among other things, services mortgage loans. As a servicer, Washington Mutual provides certain administrative and record-keeping services, including collecting loan payments from borrowers and maintaining an escrow account to pay taxes and property insurance. Washington Mutual also responds to inquiries from borrowers requesting payoff statements, which are quotations of their outstanding loan balances.

In February 2001, Maurice Grimes, Pedroza's attorney, accessed Washington Mutual's automated interactive voice response system (IVRS) to inquire about payoff procedures and fees. After being informed that Pedroza would be charged $60 for the preparation and issuance of the payoff statement, Grimes ordered a payoff statement. The statement was good through February 28, 2001, and provided daily interest amounts if the payoff amount was not paid in full by that date. Pedroza's loan account was charged $60 for the statement at the time it was issued. Grimes

later contacted Washington Mutual and indicated that he did not believe that Washington Mutual could charge the fee for providing the statement.

In March 2001, Grimes requested that a second updated payoff statement, good through March 20, 2001, be faxed to him. Washington Mutual did not charge Pedroza for the second statement because the request was made within 60 days of the first statement. On April 6, 2001, Pedroza paid her mortgage in full. Under protest she paid the $60 payoff statement fee.

In November 2001, Pedroza filed a complaint against Washington Mutual for breach of contract. Her complaint alleged that the payoff statement fee was a prepayment charge. The payment of the fee constituted economic duress and the fee was not authorized under the terms of her mortgage note. Pedroza also sought class certification, but that issue has not been raised on appeal.

In January 2003, Washington Mutual filed a motion for summary judgment, arguing that the payoff statement fee was not a prepayment charge but instead was a fee charged for an identified and valuable service provided to Pedroza. Washington Mutual supported its motion with an affidavit from Debra A. Robbins, a team manager for the Consumer Direct Fulfillment Center with Washington Mutual, and previously a section manager for the payoff department in the loan servicing division of Washington Mutual.

In her affidavit, Robbins stated Washington Mutual responds to inquiries from borrowers requesting a payoff statement. The requests are often made when borrowers are planning to pay off their mortgage loans before maturity, but are also requested for overall financial planning, to update financial statements, for divorces and bankruptcies, for general information purposes, and when borrowers are considering whether to sell or refinance their homes.

Robbins stated that Washington Mutual does not require a borrower who wants to prepay the full principal balance of her loan to obtain a written payoff statement. Washington Mutual only requires that the borrower tender the principal balance owing together with any other outstanding interest, fees, or charges. Additionally, Washington Mutual processes prepayments where payoff statement fees are incurred but not tendered at the time of payoff.

Robbins also stated that Washington Mutual does not charge borrowers for verbal quotes of their payoff statements that are given over the telephone. It does not charge for written payoff statements (1) if the request is in connection with the borrower's refinancing of an existing Washington Mutual mortgage loan, (2) if the request is for a second payoff statement and that statement was generated within 60 days of the original payoff statement request, and (3) if the borrower's loan originated in Florida, Georgia, Iowa, North Dakota, New York,

Virginia, or West Virginia. In certain circumstances, such as when a payoff statement is requested in connection with a Federal Housing Administration or a Veterans Administration loan, Washington Mutual may adjust or waive the fee. In all other circumstances, Washington Mutual charges a fee for providing a written payoff statement. The payoff statement fee is incurred at the time the statement is issued.

Robbins explained that the purpose of the payoff statement fee is to compensate Washington Mutual for the cost of providing the special service of calculating and transmitting the written payoff statement at the borrower's request. Additionally, because a payoff statement can act as an estoppel letter against Washington Mutual, it charges the fee as consideration for the risk of error that it assumes upon the issuance of the statement.

Additionally, Robbins explained that payoff statements can be ordered either (1) through a telephone call to a customer care representative, (2) through the IVRS, and (3) by a written request. The IVRS discloses the payoff statement fee before a caller determines what method of shipment, mail or fax, he wants.

Robbins also reviewed the computer and business records maintained by Washington Mutual on Pedroza's account. On December 26, 2000, Washington Mutual provided Pedroza with a letter setting forth the terms of her loan as of March 1, 2001, which included the principal balance due as of that date and the interest rate of the loan. Washington Mutual did not charge a

fee for this information. On February 14, 2001, Pedroza or her agent accessed the IVRS and ordered an expedited payoff statement. The caller was informed, in advance, of the $60 payoff statement fee. That day, Washington Mutual faxed the payoff statement to Grimes and Pedroza's loan account was charged $60 for the statement. On March 7, 2001, Pedroza or an agent ordered a second updated payoff statement. That statement was also faxed to Grimes. Pedroza was assessed a $60 fee at the time the second payoff statement was ordered, but Washington Mutual waived the fee because the request was made within 60 days of the first request. On April 6, 2001, Pedroza paid off her loan in full and paid the $60 payoff statement fee. Robbins states that Pedroza did not pay any prepayment penalties or charges.

In response to Washington Mutual's motion, Pedroza maintained that the payoff statement fee was a prepayment charge that was prohibited by her mortgage note. Pedroza attached the affidavit of one of her attorneys, Russell Green, that stated that all major title insurance companies conducting real estate closings with a loan payoff require a written payoff statement. Pedroza also attached numerous documents that were filed under seal pursuant to an agreed protective order. While we will not divulge the contents of that information, we have reviewed it for this appeal. See Skolnick v. Altheimer & Gray, 191 Ill. 2d 214, 228, 730 N.E.2d 4 (2000).

After hearing arguments on Washington Mutual's motion for

summary judgment, the trial court granted the motion simply stating that Krause governs. This appeal followed.

II. Analysis

On appeal, Pedroza argues that Krause does not control the outcome of this case because (1) a prepayment charge is different from a prepayment penalty, (2) her mortgage note did not specifically authorize Washington Mutual to charge a fee for a written payoff statement, and (3) written payoff statements are customarily required by title companies at real estate closings.

A. Summary Judgment

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2002). Summary judgment should only be granted where the right of the moving party is clear and free from doubt. Horwitz v. Holabird & Root, 212 Ill. 2d 1, 8, 816 N.E.2d 272 (2004). We review the grant of summary judgment de novo. Horwitz, 212 Ill. 2d at 8.

B. Payoff Statement Fee

In Krause, the court considered a case that was legally and factually very similar to the case before this court. The plaintiffs sued the defendant, GE Capital Mortgage Services, Inc., for breach of contract, restitution, and unfair and

deceptive practices under the Consumer Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/1 et seq. (West 1998)). Krause, 314 Ill. App. 3d at 377. Like Washington Mutual, the defendant serviced the plaintiffs' home mortgage loans. The plaintiffs' mortgage notes contained language nearly identical to the language in Pedroza's note: "I may make a full prepayment or partial prepayment without paying any prepayment charges." Krause, 314 Ill. App. 3d at 377.

The plaintiffs entered into contracts to sell their homes and sought to payoff their mortgage loans before maturity. To fulfill their contracts, the plaintiffs were required to obtain written payoff statements. On September 17, 1996, the plaintiffs Phillip and Tammy Lindbergs ordered an initial payoff statement and requested that it be sent by facsimile. The Lindbergs were charged a $10 fax fee that was included in the statement. Krause, 314 Ill. App. 3d at 379. On June 23, 1997, the Lindbergs ordered a second payoff statement and requested that it be sent by mail. The second statement included the earlier $10 fax fee and a new $15 quote fee. In the next couple of months, the Lindbergs ordered three more payoff statements and requested that two of those be sent by facsimile. In total, the Lindbergs were charged a $15 quote fee and $30 fax fees for the three faxed statements. Krause, 314 Ill. App. 3d at 380.

On June 4, 1997, the plaintiffs Steven and Patricia Krause

requested an initial payoff statement and requested that it be sent by facsimile. The statement included the $10 fax fee. On July 17, 1997, the Krause's requested a second payoff statement to be sent by facsimile. The statement included a second fax fee of $10 and a $15 quote fee. Krause, 314 Ill. App. 3d at 379.

The defendant moved for summary judgment and relied in part on the affidavit of Diane Graf, a vice president of its customer service department. Graf stated that the quote and fax fees were not prepayment charges but were charges for authorized services. Borrowers requested payoff statements not only for prepayment purposes, but also for overall financial planning, to update financial statements, for divorce or bankruptcy, and for general informational purposes. Krause, 314 Ill. App. 3d at 378.

Graf also stated that the defendant charged the $10 fax fee for only those payoff statements sent by facsimile. Additionally, the defendant charged a $10 quote fee if more than one written payoff statement on an account was requested. The fees were charged to the borrowers accounts when the services were rendered, but were not paid until the loan was paid off. Fax and quote fees were not required for prepayment of a loan because a loan could be paid off even though the borrower did not order a payoff statement and where the borrower only ordered one written payoff statement to be sent by mail. Graf also explained that the defendant fully disclosed the quote and fax fees to any

party who requested a payoff statement. Krause, 314 Ill. App. 3d at 379.

In response to the defendant's motion for summary judgment, the plaintiffs argued "that there were genuine issues of material fact that the quote and fax fees were prepayment penalties, were not authorized by the mortgages or notes, and were unfair practices under the Fraud Act." Krause, 314 Ill. App. 3d at 380. The trial court granted the defendant's motion and the appellate court affirmed the trial court's decision.

Initially the Krause court held that the quote and fax fees were not prepayment penalties. "A charge is a prepayment penalty if the 'charge imposed at the time of prepayment [was one] that would not [have been] imposed if the note were paid at maturity instead of at an earlier date.'" Krause, 314 Ill. App. 3d at 381, quoting Goldman v. First Federal Savings & Loan Ass'n of Wilmette, 518 F.2d 1247, 1252 (7th Cir. 1975). The court relied on Cappellini v. Mellon Mortgage Co., 991 F. Supp. 31 (D. Mass. 1997) and Colangelo v. Norwest Mortgage, Inc., 598 N.W.2d 14 (Minn. App. 1999), two cases that also examined whether fax and quote fees constituted prepayment charges. Krause, 314 Ill. App. 3d at 381-82.

The Krause court held that the fax and quote fees did not constitute prepayment charges because (1) the fees were not exclusively related to the prepayment of a loan and could be

charged for reasons other than prepayment, and (2) a borrower did not need to obtain a payoff statement to prepay the loan, or the borrower could pay off the loan after requesting only one statement. The "charges would be imposed whether the notes were paid at maturity or at an earlier date and therefore fail to satisfy the definition of a prepayment penalty under Goldman." Krause, 314 Ill. App. 3d at 382. The court held that "[f]ees that could be imposed in connection with a payment in full at maturity, fees that are an addition to the loan principle [sic], or fees that must be paid regardless of whether the loan is prepaid do not constitute prepayment penalties." Krause, 314 Ill. App. 3d at 383.

The Krause court also held that even assuming the plaintiffs' attorneys required written payoff statements to close on the sale of the plaintiffs' homes, the fees were not prepayment penalties because the defendant did not assess the fees because the plaintiffs prepaid their loans. The fees were incurred because the plaintiffs requested more than one payoff statement and requested that they be sent by facsimile. Krause, 314 Ill. App. 3d at 383-84. The court held that the fees represented compensation for special services that the plaintiffs requested. Additionally, the plaintiffs could have obtained the information without incurring a fee. Krause, 314 Ill. App. 3d at 385.

In this case, Pedroza attempts to distinguish Krause because that court used the terms prepayment charges and prepayment penalties interchangeably. Pedroza contends that a prepayment charge is any expense or charge made in conjunction with a loan prepayment other than a prepayment penalty.

Although the Krause court did use the terms interchangeably, the court considered a contract provision identical to the provision in Pedroza's contract and it considered charges for the exact same service of providing a written payoff statement. The court also relied on Cappellini, in which the court considered identical contract language, i.e., "I may make a full prepayment or partial prepayments without paying any prepayment charge," and fees charged for providing written payoff statements. Cappellini, 991 F. Supp. at 34.

The Cappellini court explained:

> "Historically, a borrower was not permitted to prepay a loan. When practices changed to allow borrowers to prepay loans in part or full, prepayment penalties or charges were developed in order to compensate lenders for costs associated with the unanticipated reinvestment of principal, presumptively at less favorable rates. These charges deterred borrowers from prepaying and afforded lenders

> more predictable returns during periods of fluctuating interest rates. These prepayment charges were usually calculated in relation to the amount and timing of prepayment." (Emphasis added.) Cappellini, 991 F. Supp. at 36.

Accordingly, "[p]repayment charges are those which are peculiarly associated with prepayment alone." (Emphasis added.) Cappellini, 991 F. Supp. at 38.

In this case, Washington Mutual's payoff statement fee is not contingent solely on a borrower's prepayment of a loan. The record indicates that a borrower may request a payoff statement for any number of reasons that are not related to prepayment. The fees are incurred at the time Washington Mutual provides the statement and not at prepayment. Additionally, once a borrower requests a statement, the fee would be imposed whether the note was paid at maturity or at an earlier date. See Krause, 314 Ill. App. 3d at 382. Washington Mutual did not require a written payoff statement before a borrower was permitted to payoff a loan, and it accepted prepayment even in those cases where a payoff statement fee was not charged.

Therefore, even if we were to accept Pedroza's definition of a prepayment charge, the payoff statement fee would not fit within that definition. The fee is not peculiarly associated

with prepayment alone but is associated with a special service provided by Washington Mutual at the request of one of its borrowers. See Krause, 314 Ill. App. 3d at 385.

Like the plaintiffs in Krause, Pedroza also argues that because written payoff statements are customarily required to complete a real estate closing, the fees constitute prepayment charges. Again we agree with the Krause court that this fact does not make a payoff statement fee a prepayment charge. See Krause, 314 Ill. App. 3d at 383-84. The fact that the Krause plaintiffs were charged a quote fee for the second, but not the first payoff statement does not affect our analysis. The payoff statement fee that Washington Mutual charged Pedroza was a fee assessed for a special service at the time the service was rendered. It was not assessed because Pedroza paid off her loan early. Additionally, the record reflects that a borrower's ability to complete a real estate closing would not be hampered by his failure to pay that fee when he paid off his loan. In her affidavit, Robbins stated that Washington Mutual processes prepayments where payoff statement fees are incurred but were not tendered at the time of payoff.

In Krause, the plaintiffs also argued that even if the fees did not constitute prepayment penalties, their mortgages and notes did not authorize the defendant to charge the fees. That court held that the plaintiffs' mortgages and notes were not

ambiguous; they listed certain fees that were permitted and certain fees that were prohibited. The language of the contracts did not, however, prohibit the imposition of a charge for services provided outside the contracts. Krause, 314 Ill. App. 3d at 386. The court explained that "[w]e do not believe that plaintiffs' mortgages and notes entitled them to receive free of charge any service not specifically referenced in the contract." Krause, 314 Ill. App. 3d at 387.

In this case, Pedroza also argues that Washington Mutual was not permitted to charge a statement fee because the fee was not specifically authorized in the mortgage or note. Pedroza contends that as the loan servicer, Washington Mutual was an assignee and was subject to the terms of the contract and could not require the payment of new fees or charges.

As we noted earlier, Washington Mutual did not require a written payoff statement before a borrower could prepay a loan. Instead, the fees relate to "special services outside of the scope of the basic services provided by a mortgage servicer." Cappellini, 991 F. Supp. at 39. Although Pedroza's mortgage did not specifically permit payoff statement fees, it did not prohibit them either. See Cappellini, 991 F. Supp. at 39 ("[i]t would be difficult for form notes and mortgages that cover long time periods to anticipate and include each and every such incidental special request made by a borrower"). We agree with

the Krause court that Pedroza is not entitled "to receive free of charge any service not specifically referenced in the contract." Krause, 314 Ill. App. 3d at 387.

Washington Mutual disclosed that it would charge Pedroza a $60 payoff statement fee for providing a payoff statement at her request. The fee was not a prepayment charge and was not prohibited by her mortgage note. Based on the record in this case, we find no issue of material fact regarding Pedroza's breach of contract claim and that Washington Mutual is entitled to judgment as a matter of law.

III. Conclusion

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

GARCIA, J., with WOLFSON and HALL, JJ., concurring.